UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 21-cr-599 (RBW) |
| | : | |
| DONNIE DUANE WREN | : | |
| | : | |
| **Defendant** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT WREN'S
## MOTION FOR BILL OF PARTICULARS

Defendant Donnie Duane Wren moves under Federal Rule of Criminal Procedure 7(f) for a bill of particulars. ECF 54. Specifically, Wren makes two specific requests. First, he asks this Court to force the government to explain, as to Count 13, "the nature of all events, behavior, and actions upon which the prosecution will rely to prove" the defendant committed this offense, "how such acts are separate and distinct from the alleged criminal acts charged in Count 8," or whether Count 13 and Count 8 "charg[e] the same exact conduct." ECF 54 at 1. Second, defendant seeks the same information as to Count 9 and asks that the government distinguish it from the alleged criminal acts charged in Count 14. ECF 54 at 2.

Whether a bill of particulars is appropriate lies within the Court's "sound discretion." *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (quotation omitted). Here, Wren fails to make any case about why any of the charges in the Second Superseding Indictment are vague, unclear, or confusing. *See* ECF 54. Instead, he seeks to clarify whether and how two pairs of charges overlap with each other, which would be a preview of the government's theory, and is not the point of a bill of particulars. ECF 54 at 1-2. He utterly fails to support this request, citing only

cases that establish what a bill of particulars is, and no cases that explain why one would be warranted here. ECF 54 at 2. Exercising its discretion, this Court should deny the motion.

## FACTUAL BACKGROUND

Defendants Donnie Wren and Thomas Smith, cousins, traveled together to Washington, D.C. to attend former President Trump's rally on January 6, 2021. After the rally, Wren and Smith walked from the rally to the United States Capitol. They entered Capitol grounds and joined in the riot.

Wren and Smith were in the Lower West Terrace Tunnel area at around 3:00 p.m. They made their way to the Tunnel entrance. Wren remained at the mouth of the Tunnel while Smith, carrying a flag attached to a flagpole, entered the Tunnel and approached the police line standing guard at the doors leading into the Capitol building. Moments later, Smith jammed the flagpole like a spear trying to stab at one of the glass windowpanes within the first set of Tunnel doors.

Less than an hour later, at approximately 3:50 p.m., Smith and Wren made their way to the Upper West Terrace, where they stood directly in front of the police line, walking back and forth and waving flags for approximately 10 minutes. A physical conflict began between the police and the crowd of rioters at approximately 4:21 p.m. Smith and Wren participated in this conflict, pushing back against the officers' riot shields for approximately 25 seconds. Smith turned his back to the officers then used his body weight to push into a police riot shield. Wren leaned into one of the officer's shields, using the weight of his body and his hands to push into the shield.

Smith, following the physical confrontation with the police line, charged into a crowd of rioters to kick an officer's backside, then darted out of the crowd. Moments later, Smith threw a metal stick/pole at the police line. The metal stick/pole hit an officer in the head, causing the officer to stagger backwards. Smith then retreated into the crowd of rioters.

Smith and Wren left the Upper West Terrace area at approximately 4:30 p.m. and began their departure from the Capitol grounds.

## PROCEDURAL HISTORY

On September 24, 2021, a grand jury returned an indictment charging the defendant with the following offenses: 18 U.S.C. § 231(a)(3), civil disorder (Count Two); 18 U.S.C. § 111(a)(1), assaulting, resisting or impeding certain officers (Count Four); 18 U.S.C. §§ 1752(a)(1) and (2), entering and remaining in a restricted building or grounds and disorderly and disruptive conduct in a restricted building or grounds (Counts Six and Seven); 18 U.S.C. §§ 1752(a)(4), engaging in physical violence in a restricted building or grounds (Count Eight); and 40 U.S.C. §§ 5104(e)(2)(D) and (F), disorderly conduct in a Capitol building and act of physical violence in the Capitol grounds or buildings (Counts Nine and Ten). ECF No. 1.

The grand jury returned a superseding indictment on December 7, 2022. ECF No. 51. Counts Four and Five were amended to include the approximate times of the offense conduct. A new charge was added in Count Six against defendant Thomas Harlen Smith. Counts Seven, Eight, and Nine[1] were amended to remove Defendant Smith from these counts and to remove the Vice-President elect language. Count Ten, Eleven and Twelve were added to charge defendant Smith with various violations of 18 U.S.C. § 1752 while using and carrying a deadly and dangerous weapon. Counts Thirteen and Fourteen were unchanged in content and correspond to Counts Nine and Ten in the original indictment.

A second superseding indictment was returned by the grand jury on March 15, 2023. Counts Two and Four were amended to add "and other law enforcement agencies" to the language of the charges. ECF No. 71.

---

[1] Counts Six, Seven and Eight in the original indictment. ECF 1.

The government has produced a substantial amount of discovery to Wren, including law enforcement report, photographs, third-party videos, body worn camera footage, and United States Capitol Police CCTV footage. These items document the conduct that form the basis of the charges against Wren. Finally, the government has provided the defendant access to a global discovery database.

## ARGUMENT

An indictment need only include "a plain, concise, and definite written statement of the essential facts constituting the offense charged," but a court may, in its discretion, "direct the government to file a bill of particulars" clarifying the allegations in the indictment. Fed. R. Crim. P. 7(c)(1), (f). A bill of particulars "ensure[s] that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). It is not required, however, if the indictment "is sufficiently specific, or if the requested information is available in some other form." *Id.*; *see United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 179 (D.D.C. 2015) (denying motion for bill of particulars and noting that the government ha provided extensive discovery that "allows Defendants to adequately prepare for trial").

A bill of particulars "is not a discovery tool or a devise for allowing the defense to preview the government's theories or evidence." *United States v. Ramirez*, 54 F. Supp. 2d 25, 29 (D.D.C. 1999); *see also United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004) (same). Rather, a bill of particulars "is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation and not to provide the defendant with the fruit of the government's investigation." *United States v. Sanford Ltd.*, 841 F. Supp. 2d

309, 316 (D.D.C. 2012) (internal quotation marks and citation omitted, emphasis in original). Therefore, a bill of particulars "properly includes clarification of the indictment, not the government's proof of its case." *United States v. Martinez*, 764 F. Supp. 2d 166, 173 (D.D.C. 2011) (internal quotation marks and citation omitted); *United States v. Savoy*, 889 F. Supp. 2d 78, 115 (D.D.C. 2012) (same); *see also United States v. Taylor*, 17 F. Supp. 3d 162, 178 (E.D.N.Y. 2014) (bill of particulars "may not be used by the defense as a fishing expedition or to force the government to reveal all its evidence before trial.").

Applying this principle, judges of this Court have consistently denied motions for a bill of particulars where, as here, the motion seeks details about the nature of the government's evidence. Thus, for example, in *United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017), the Court denied a motion for a bill of particulars requesting information about the basis for fraud and tax charges against the defendant, including the precise representations allegedly made by the defendant and the amount of taxes allegedly owed. The Court explained that the requested information had already been provided to the defendant in discovery and elsewhere, and a "bill of particulars is meant to allow a defendant to properly prepare for trial, not provide a method to force the prosecution to connect every dot in its case." *Id.*

Similarly, in *Brodie*, the Court denied a motion for a bill of particulars requesting "the circumstances surrounding the alleged acts" of fraud committed by the defendants as well as "other evidentiary details." 326 F. Supp. 2d at 92. The Court reasoned that the charges set forth in the indictment were "detailed and alleged with particularity" and "the discovery provided by the government has been voluminous," and therefore there was "no reason for any further particularization of the overt acts." *Id.*

The same result is appropriate here for three reasons. First, the second superseding indictment provides sufficient detail outlining the allegations against Wren. *See Mejia*, 448 F.3d at 445 (no bill of particulars required where the superseding indictment identified, among other things, the object of the charged conspiracy, the conspiracy's "time period," the applicable *mens rea*, and locations where conspirators acted). Along with providing a specific date for the alleged conduct, the second superseding indictment language tracks closely that of the applicable statutes. Looking at the indictment, the differences between Counts Eight and Thirteen and Counts Nine and Fourteen are clear. Counts Eight and Nine address, among other things, "restricted" areas. Counts Thirteen and Fourteen specifically address the Capitol building or grounds.

Nothing in the second superseding indictment's language is vague, unclear, or lacking in specificity, especially in light of Wren's recorded conduct. If Wren believes the government's evidence is insufficient or that the statutes themselves are vague as applied to his conduct, then he should move for the appropriate relief.

Second, the full scope of the conduct giving rise to the allegations in this case is recorded and has been disclosed to defense. Wren has copies of videos and photographs showing his aggressive, disorderly and assaultive conduct while on Capitol grounds. The "nature of all events, behavior, and actions upon which the prosecution will rely" to prove that the Defendant's conduct violated all these statutes has been disclosed.

Furthermore, as to the larger Capitol breach investigation, Wren has access to global discovery productions. The discovery database is routinely updated with material relevant to the Capitol breach investigation, including surveillance and open-source videos that defense may deem useful to prepare Wren's case, among other things. The full discovery productions—both

global and defendant specific—provide Wren more than an adequate basis to understand the charges against him with sufficient precision to prepare for trial.

Finally, Rule 7(f) does not entitle Wren to the granular information he seeks. For example, Wren requests "the nature of all events, behavior, and actions…upon which the prosecution will rely or prove Mr. Wren committed" disorderly conduct and physical violence and "how such acts are separate and distinct from the alleged criminal acts charged" in Counts Eight and Nine. ECF 54 at 1-2. Wren can, through his own investigation and a review of the discovery produced by the government, identify his *own* conduct that meets the elements of the alleged crimes. A bill of particulars is not a sword that enables the defendant to "force the government to reveal all its evidence before trial." *Taylor*, 17 F. Supp. 3d at 178.

Indeed, Wren does not claim that any particular count of the indictment is vague, unclear, or lacking specificity, but rather seeks instruction on whether two pairs of counts overlap. *See* ECF 54. He is asking for a preview of the government's theory, not for clarification, and that request is not a proper basis to order a bill of particulars.

**CONCLUSION**

For all these reasons, the Defendant's motion for a bill of particulars should be denied.

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES
                                        UNITED STATES ATTORNEY
                                        D.C. Bar No. 481052

By:     */s/ Melanie L. Alsworth*
          Melanie L. Alsworth
          Ark. Bar No. 2002095
          Trial Attorney
          On detail to the USAO-DC
          601 D Street, N.W.
          Washington, DC 20530
          Phone: (202) 598-2285
          Email: melanie.alsworth2@usdoj.gov

          Tighe Beach
          Assistant United States Attorney
          601 D. Street, N.W.
          Washington, DC  20530
          Phone:  202-252-1788
          Email:  tighe.beach@usdoj.gov