# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 1:21-cr-00599-RBW** |
| **v.** | : | |
| | : | |
| **DONNIE DUANE WREN, and** | : | |
| **THOMAS HARLEN SMITH,** | : | |
| | : | |
| **Defendants.** | : | |

## GOVERNMENT'S RESPONSE TO WREN'S MOTION FOR JUDGEMENT OF ACQUITTAL ON COUNTS TWO AND FOUR

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to Wren's Motion for Judgment of Acquittal, ECF No. 126, on Counts Two and Four of the Superseding Indictment ("Indictment"), ECF No. 71.[1] The Court should deny Wren's Motion because, as it correctly found during the trial, there was sufficient evidence to convict the Wren of all counts beyond a reasonable doubt. The verdicts were not inconsistent, and even if they were, acquittal is not appropriate.

## FACTUAL BACKGROUND

At trial, the Government's evidence proved that on January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was underway, a large crowd gathered outside the United States Capitol building, entered the restricted grounds, and forcibly breached the Capitol building. As a result, the Joint Session and the entire

---

[1] At first, Wren also lists Count Seven for acquittal, but he makes no relevant argument and, in his conclusion, only asks for acquittal on Counts Two and Four. Thus, the Court should deny Wren's motion as to Count Seven.

official proceeding of the Congress were halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials. United States Capitol Police ("USCP") Captain Carneysha Mendoza testified that USCP sent out a call for aid to nearby police departments, including Prince George's ("PG") County. Many officers from these departments responded and helped USCP clear the rioters from the Capitol.

Defendants Thomas Smith and Donnie Wren, cousins, traveled together to Washington, D.C. to attend former President Trump's rally on January 6, 2021. After the rally, Smith and Wren walked from the rally to the United States Capitol. They entered Capitol grounds and joined in the riot. As they approached the Lower West Terrace, they saw rioters climbing the scaffolding leading to the inauguration stage. Wren and Smith followed the rioters up this scaffolding onto the stage.

Wren and Smith approached the Lower West Terrace Tunnel at around 3:00 p.m. Wren remained at the mouth of the Tunnel while Smith, carrying a flag attached to a flagpole, entered the Tunnel. Moments later, Smith jammed the flagpole like a spear trying to stab at one of the glass windowpanes within the first set of Tunnel doors. When reunited outside the Tunnel, Wren saw that Smith had been sprayed with pepper spray.

Smith and Wren then climbed up a railing to the Upper West Terrace, where they stood directly in front of the police line. When a police line advanced to clear the Terrace at approximately 4:20 p.m., Smith and Wren confronted the line and pushed back against the officers' riot shields for approximately 20 seconds. These shields said "POLICE" on them, and the officers wore riot armor and helmets and carried sticks. PG County Police Corporal Robert Heaney—who was in this line, a few feet from Wren—testified that the officers in the shield wall were from his department.

Smith and Wren left the Upper West Terrace area at approximately 4:35 p.m.

## ARGUMENT

**I.   The Evidence was Sufficient to Support Guilty Verdicts on Counts Two and Four.**

Wren argues that no rational juror could have concluded that Wren pushed against a "law enforcement officer lawfully engaged in the lawful performance of his official duties" because the officer was not identified by name and no formal "mutual aid agreement" between the District of Columbia and Maryland, or PG County, was presented. These arguments are without merit and do not provide a basis to overturn the jury's verdict on Counts Two and Four.

**A.   Applicable Law**

A District Court may enter a judgment of acquittal on any count of conviction if it finds that the evidence on that count is insufficient to sustain a conviction. Fed. R. Crim. P. 29. A defendant "seeking to overturn a jury verdict for insufficient evidence bears an exceedingly heavy burden." *United States v. Salamanca*, 990 F.2d 629, 637 (D.C. Cir. 1993). Sufficiency review "is highly deferential: [the Court] must accept the jury's verdict if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Williams*, 836 F.3d 1, 6 (D.C. Cir. 2016) (quotation marks omitted). The Court "view[s] the evidence in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *Id.* (quotation marks omitted).

**B.   The Evidence was Sufficient to Establish that Wren Pushed Against a Law Enforcement Officer Assisting the U.S. Capitol Police**

Wren's first point—that the officer was not identified by name—fails for obvious reasons. The defendant cites no law for the proposition that the government must identify the victim by name. And here, the victim officer stood in a shield wall, held a shield that said "POLICE," and PG County Corporal Heaney testified that they were from the PG County Police Department. The

context of the riot on January 6, 2021, is critical. There were thousands of officers responding to the Capitol, and many did not wear body-worn cameras. Considering that context, the Government's evidence allowed the jury to conclude that the person Wren pushed against was a "law enforcement officer lawfully engaged in the lawful performance of [] official duties," 18 U.S.C. § 231(a)(3), and that they were assisting federal officers (namely USCP) in the performance of their official duties. 18 U.S.C. §§ 111(a)(1), 1114(a).

Wren also argues that the evidence was insufficient to prove that this PG County officer was "engaged in the lawful performance of his official duties" because no "mutual aid agreement" was admitted. Wren has not shown that a formal agreement was required for PG County Police to assist UCSP.[2] The government produced sufficient evidence for a reasonable juror to conclude that the PG County officers were "lawfully engaged in the lawful performance" of official duties. USCP Captain Mendoza testified that USCP issued a call to the PG County Police Department for assistance on January 6, 2021. This call prompted PG County Police to respond in full riot gear. Corporal Heaney testified that his unit responded by gathering their gear and driving to the Capitol on a bus. He described how they exited the bus on the South side of the Capitol and walked to the Upper West Terrace, where they formed a shield line. They advanced to clear the area around 4:20 p.m. Given this evidence and the emergency of the riot, a reasonable juror could find that the PG

---

[2] In support of his argument, Wren cites to 42 U.S.C. § 5196 while blithely stating that this requirement comes from "Section 7302 of the Intelligence Reform and Terrorism Protection (sic) Act of 2004" (titled the "Terrorism *Prevention* Act"). ECF No. 126 at 4. The only mention of "mutual aid" in this statute comes in 42 U.S.C. § 5196(h)(2)(D), which states "The Administrator may . . . aid and assist in encouraging reciprocal emergency preparedness legislation by the States which will permit the furnishing of mutual aid for emergency preparedness purposes in the event of a hazard which cannot be adequately met or controlled by a State or political subdivision thereof[.]" This statute does not forbid mutual aid without a formal agreement.

County officers clearing the Upper West Terrace were "lawfully engaged in the lawful performance" of official duties.

For these reasons, Wren's sufficiency arguments fail.

## II.      Even if the Jury's Verdicts were Inconsistent, Acquittal is Inappropriate.

Wren argues that the remedy for an inconsistent verdict is acquittal, but the Supreme Court stated "[c]onsistency in the verdict is not necessary. Each count of an indictment is regarded as if it was a separate indictment." *United States v. Powell*, 469 U.S. 57, 62 (1984) (quoting *Dunn v. United States*, 284 U.S. 390, 393 (1932)). This is because:

> inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

*Powell*, 469 U.S. at 65. "There are rational and, ultimately, permissible explanations for inconsistent verdicts." *United States v. Taylor*, 2022 WL 17820341, 2 (D.D.C. December 20, 2022) (Boasberg, J.) "[I]nconsistent verdicts are not necessarily a sign of prejudice or the presence of any other factor that would impeach the validity of a verdict." *Id.* Like the defendant in *Taylor*, Wren may have benefitted from a jury compromise reflecting "lenity on the part of the jury" — a legal explanation. *Id.*[3] Crucially, "a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." *Powell*, 469 U.S. at 67. "This review should be independent of the jury's determination that evidence on another count was insufficient." *Id.*

---

[3] Unlike the defendant in *Taylor*, Wren does not argue that the alleged inconsistency is a result of jurors being improperly swayed by external information.

In the last paragraph of his motion, Wren states: "the inconsistency is a result of the Court's instructions and answers to jury notes, which were objected to by counsel, and which led to the irreconcilable verdicts." ECF No. 126 at 7. Since Wren does not indicate which "instructions and answers to jury notes" caused "the irreconcilable verdicts," or how they did so, he fails to meet his "heavy burden" under Rule 29. *Salamanca*, 990 F.2d at 637. Without a reason to suspect that the jury's decision-making was improper—such as evidence that it considered outside information— the Court should not consider any alleged inconsistency in the verdicts as prejudicial against the defendant. *See Powell*, 469 U.S. at 62; *Taylor*, 2022 WL 17820341 at 2. Since Wren does not allege any evidence of jury impropriety, the Court should deny his motion.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Wren's Motion for Acquittal on Counts Two, Four, and Seven of the Indictment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:      */s/ Tighe R. Beach*
TIGHE R. BEACH
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
CO Bar No. 55328
(240) 278-4348
tighe.beach@usdoj.gov

VICTORIA A. SHEETS
Assistant United States Attorney
NY Bar No. 5548623
601 D Street NW
District of Columbia, DC 20530

6

(202) 252-7566
victoria.sheets@usdoj.gov

MELANIE L. ALSWORTH
Ark. Bar No. 2002095
Trial Attorney
On detail to the USAO-DC
601 D Street, N.W.
Washington, DC 20530
(202) 598-2285
melanie.alsworth2@usdoj.gov